# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

G.S.G. EXCAVATING, On Behalf of Itself And All
Others Similarly Situated,

**V.**

HONEYWELL INTERNATIONAL, INC., ET AL.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**CV 08     3041**

**BZ**

TO: (Name and address of defendant)

SEE ATTACHED ADDENDUM

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JOSEPH M. PATANE
LAW OFFICE OF JOSEPH M. PATANE
2280 UNION STREET
SAN FRANCISCO, CA 94123

an answer to the complaint which is herewith served upon you, within  20    days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

DATE June 20, 2008

MARY ANN BUCKLEY
(BY) DEPUTY CLERK

| RETURN OF SERVICE |
|---|
| DATE |
| Service of the Summons and Complaint was made by me [1] |
| Name of SERVER                                                 TITLE |

Check one box below to indicate appropriate method of service

☐   Served Personally upon the Defendant. Place where served:

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐   Returned unexecuted:

☐   Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
            Date                          Signature of Server

                                        _____
                                        Address of Server

(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

## Addendum-Summons

**NAMES AND ADDRESSES OF DEFENDANTS:**

**Honeywell International, Inc.**            101 Columbia Road, Morris
                                            Township, New Jersey 07962

**Champion Laboratories, Inc.**             200 S. Fourth Street, Albion, Illinois
                                            62806

**Purolator Filters N.A., LLC**             3200 Natal Street, Fayetteville, North
                                            Carolina 28306

**Wix Filtration Products**                 1 Wix Way, Gastonia, North Carolina
                                            28054

**Cummins Filtration, Inc.**                1801 Hwy 51 / 138, P.O. Box 428,
                                            Stoughton, WI 53589-0428

**The Donaldson Company**                   1400 West 94th Street, Minneapolis,
                                            MN 55431

**Baldwin Filters, Inc.**                   440 E. Hwy. 30, Kearney, Nebraska
                                            68848-6010

**Bosch U.S.A.**                            2800 S. 25th Avenue, Broadview,
                                            Illinois 60155-4594

**Mann + Hummel U.S.A., Inc.**              6400 S. Sprinkle Road, Portage,
                                            Michigan 49002-9706

**ArvinMeritor, Inc.**                      2135 West Maple Road, Troy, MI
                                            48084

**United Components, Inc.**                 14601 Highway 41 N., Evansville,
                                            Indiana 47725-9357

**UIS, Inc.**                               15 Exchange Place, Suite 1120,
                                            Jersey City, NJ 07302.

**The Carlyle Group**                       1001 Pennsylvania Ave, N.W. #220,
                                            Washington, DC 20004-2505

**Affinia Group, Inc.**                     1101 Technology Drive, Ann Arbor,
                                            Michigan 48108

**Cummins, Inc.**

500 Jackson Street, Box 3005,
Columbus, Indiana 47202

**Hastings Premium Filters**

4400 E. Hwy. 30, Kearney, Nebraska
68848-6010

**Clarcor, Inc.**

840 Crescent Centre Drive, Suite
600, Franklin, Tennessee 37067

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

## I.(a) PLAINTIFFS

G.S.G. Excavating, On Behalf of Itself And All Others Similarly Situated,

## DEFENDANTS

Honeywell International, Inc.; Champion Laboratories, Inc.; Purolator Filters N.A., LLC; Wix Filtration Products; Cummins Filtration, Inc. (contd. on attached Addendum)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Solano County, California

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(C)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kenneth L. Valinoti, Valinoti & Dito, LLP, 180 Montgomery Street, San Francisco, CA 94104, (415) 986-1338

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF

(For diversity cases only)                     AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original Proceeding  ☐ Removed from State Court  ☐ Remanded from Appellate Court  ☐ Reinstated or Reopened  ☐ Transfered from Another district (specify)  ☐ Multidistrict Litigation  ☐ Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | **Med Malpractice** | ☐ 625 Drug Related Seizure of | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault Libel & | **Product Liability** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of | Slander | ☐ 368 Asbestos Personal | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| Judgment | ☐ 330 Federal Employers | **Injury Product Liability** | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt Organizations |
| ☐ 151 Medicare Act | Liability | | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 850 Securities/Commodities/ |
| Student Loans (Excl | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| Veterans) | Liability | ☐ 371 Truth In Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | 12 USC 3410 |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 160 Stockholders Suits | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | **Product Liability** | ☐ 730 Labor/Mgmt Reporting & | ☐ 863 DIWC/DIWW (405(g)) | Act |
| ☐ 195 Contract Product Liability | | | Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| | | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl.Ret. Inc. Security | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate | Act | ☐ 870 Taxes (US Plaintiff or | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence Habeas Corpus: | | Defendant | Determination Under |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 530 General | | ☐ 871 IRS - Third Party | Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | ☐ 446 Amer w/ disab - Other | ☐ 555 Prison Condition | | | |
| | ☐ 480 Consumer Credit | | | | |
| | ☐ 490 Cable/Satellite TV | | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Class action on behalf of indirect purchasers of automotive Filters for violation of 15 U.S.C. Section 1 and various state antitrust and consumer protection laws.

## VII. REQUESTED IN COMPLAINT: ☒ CHECK IF THIS IS A CLASS ACTION   DEMAND $☐   CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23                                                                JURY DEMAND:☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
6/19/08

SIGNATURE OF ATTORNEY OF RECORD
*Joseph M Patane*

## Addendum-Civil Case Cover Sheet

**DEFENDANTS contd:**

**The Donaldson Company**
**Baldwin Filters, Inc.**
**Bosch U.S.A.**
**Mann + Hummel U.S.A., Inc.**
**Arvinmeritor, Inc.**
**United Components, Inc.**
**UIS, Inc.**
**The Carlyle Group**
**Affinia Group, Inc.**
**Cummins, Inc.**
**Hastings Premium Filters**
**Clarcor, Inc.**

1    JOSEPH M. PATANE, ESQ. (72202)                    FILED
     **LAW OFFICE OF JOSEPH M. PATANE**
2    2280 Union Street                                 JUN 20  FI 2:42
3    San Francisco, CA  94123
     Telephone:  (415) 563-7200                         U.S. DISTRICT COURT
4    Facsimile: (415) 346-0679
     E-mail: jpatane@tatp.com
5
     KENNETH L. VALINOTI, ESQ. (118442)
6    **VALINOTI & DITO LLP**
7    180 Montgomery Street, Suite 940
     San Francisco, CA 94104
8    Telephone: (415) 986-1338
     Facsimile: (415) 986-1231
9    E-mail: kvalinoti@valinoti-dito.com

10   Attorneys for Plaintiff G.S.G. Excavating

11              **UNITED STATES DISTRICT COURT**                **BZ**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13   G.S.G. Excavating, on behalf of itself and all  )  Case No.        **3041**
14   others similarly situated,                       )  **CV  08**
                                                      )
15              Plaintiff,                             )  **CLASS ACTION COMPLAINT**
                                                      )
16   vs.                                              )
                                                      )
17   HONEYWELL INTERNATIONAL, INC.;           )
     CHAMPION LABORATORIES, INC.;             )       **JURY TRIAL DEMANDED**
18   PUROLATOR FILTERS N.A., LLC; WIX         )
     FILTRATION PRODUCTS; CUMMINS             )
19   FILTRATION, INC.; CUMMINS, INC.;         )
     THE DONALDSON COMPANY;                   )
20   BALDWIN FILTERS, INC.; BOSCH             )
     U.S.A.; MANN + HUMMEL U.S.A., INC.;      )
21   ARVINMERITOR, INC.; UNITED               )
     COMPONENTS, INC.; THE CARLYLE           )
22   GROUP; AFFINIA GROUP, INC.;              )
     HASTINGS PREMIUM FILTERS;                )
23   CLARCOR, INC.; and DOES 1-20,            )
     inclusive,                               )
24                                            )
25              Defendants                     )
     _____ )
26

27

28

                              **1**
                   **CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

G.S.G. Excavating ("Plaintiff") on behalf of itself and all others similarly situated in the United States, brings this action for damages and injunctive relief under state and federal antitrust, unfair competition, and consumer protection laws against the Defendants named herein, demanding trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of individuals and entities that indirectly purchased aftermarket automotive filters ("Filters") (as further defined below), in the United States from Defendants, their predecessors, or their controlled subsidiaries and affiliates during the period beginning at least January 1, 1999 through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants conspired to fix, raise, maintain or stabilize prices of Filters sold in the United States. Because of Defendants' unlawful conduct, Plaintiff and other Class Members paid artificially inflated prices for Filters and have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

2. This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover damages under state antitrust and consumer protection laws, and to recover costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' violations of those laws.

3. The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

4. This court also has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiff is a citizen of a state different from any Defendant and the aggregated amount

1  in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has

2  jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of

3  a state within the United States and one or more of the Defendants is a citizen or subject of a

4  foreign state."

5      5.      Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in

6  this judicial district because during the Class Period one or more of the Defendants resided,

7  transacted business, was found, or had agents in, this district, and because a substantial part of

8  the events giving rise to Plaintiff's claims occurred in this district, and a substantial portion of

9  the affected portion of the interstate trade and commerce described below has been carried out in

10  this district.

11                                       **DEFINITIONS**

12      6.      As used herein, the term "Filters" means oil, fuel, engine air, cabin air, coolant,

13  transmission, and hydraulic filters used in the aftermarket (i.e., the market for replacement

14  filters).

15      7.      The "Class Period" or "relevant period" means the period beginning at least

16  January 1, 1999 through the present.

17      8.      "Person" means any individual, partnership, corporation, association, or other

18  business or legal entity.

19      9.      The "Indirect Purchaser States" are Arizona, California, District of Columbia,

20  Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,

21  North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and

22  Wisconsin.

23      10.     The "Consumer Fraud States" are Arkansas, California, District of Columbia,

24  Florida, Hawaii, Kansas, Maine, Massachusetts, Nebraska, New York, New Hampshire, New

25  Mexico, North Carolina, Rhode Island, and Vermont.

26  //

27  //

28  //

1

**PLAINTIFF**

2       11.     Plaintiff G.S.G. Excavating is a California resident. During the relevant period,

3    G.S.G. Excavating indirectly purchased Filters from one or more of the Defendants or their co-

4    conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

5                                          **DEFENDANTS**

6       12.     Defendant Honeywell International, Inc. ("Honeywell") is a Delaware

7    corporation with its principal place of business located at 101 Columbia Road, Morris

8    Township, New Jersey 07962. During the Class Period, Honeywell directly and through its

9    wholly-owned and controlled subsidiaries manufactured, marketed, sold and/or distributed

10   Filters to customers throughout the United States, principally under the Fram® brand.

11      13.     Defendant Champion Laboratories, Inc. ("Champion") is a Delaware corporation

12   with its principal place of business located at 200 S. Fourth Street, Albion, Illinois 62806.

13   During the Class Period, Champion directly and through its wholly-owned and controlled

14   subsidiaries manufactured, marketed, sold and/or distributed Filters to customers throughout the

15   United States under the following brands: Champ Quality Oil Filters, Champ Quality Air Filters,

16   Kleener® Cabin Air Filters, Champ Quality Fuel Filters, Champ Quality Transmission Filters,

17   and PetroClear® Dispensing Filters.

18      14.     Defendant UIS, Inc. is a privately-held corporation headquartered in New Jersey,

19   with a business address at 15 Exchange Place, Suite 1120, Jersey City, NJ 07302. Prior to June

20   2003, Champion Laboratories was owned by UIS, Inc. and UIS Industries, Inc.

21      15.     Defendant United Components, Inc. ("United") is a Delaware corporation with

22   its principal place of business located at 14601 Highway 41 N., Evansville, Indiana 47725-9357.

23   Defendant Champion is a wholly-owned subsidiary of United. UCI is an indirect wholly-owned

24   subsidiary of UCI Holdco, Inc. ("UCI Holdco"). During the Class Period, United directly and

25   through its wholly-owned and controlled subsidiaries manufactured, marketed, sold and/or

26   distributed Filters to customers throughout the United States.

27      16.     The Carlyle Group ("Carlyle") is a private investment group partnership based in

28   Washington, District of Columbia, with a business address at 1001 Pennsylvania Ave, N.W.

1   #220, Washington, DC 20004-2505. Through its affiliates, Carlyle Partners III, L.P. and CP

2   Coinvestment, L.P., Carlyle owns 91.6% of UCI Holdco's common stock. Additionally,

3   defendant United's entire board has been designated by affiliates of Carlyle and the majority of

4   board members are associated with Carlyle. Carlyle affiliates also control the appointment of

5   United's management. During the Class Period, Carlyle directly and through its wholly-owned

6   and controlled subsidiaries manufactured, marketed, sold and/or distributed Filters to customers

7   throughout the United States.

8       17.    Defendant Purolator Filters N.A., LLC ("Purolator") is a limited liability

9   company with its principal place of business located at 3200 Natal Street, Fayetteville, North

10  Carolina 28306. Purolator is owned and operated through a joint venture between Defendants

11  Bosch U.S.A. and Mann + Hummel U.S.A., Inc. During the Class Period, Purolator directly and

12  through its wholly-owned and controlled subsidiaries manufactured, marketed, sold and/or

13  distributed Filters to customers throughout the United States under the following brands:

14  PureONE Oil Filters, PremiumPLUS Oil Filters, PureONE Air Filters, PremiumPLUS Media

15  Air Filters, and BreatheEASY® Cabin Air Filters.

16      18.    Defendant Bosch U.S.A. ("Bosch") is the United States regional branch of

17  Robert Bosch GmbH, a privately held conglomerate located in Germany. Bosch's Auto Parts

18  business is located at 2800 S. 25th Avenue, Broadview, Illinois 60155-4594. During the Class

19  Period, Bosch directly and through its wholly-owned and controlled subsidiaries manufactured,

20  marketed, sold and/or distributed Filters to customers throughout the United States under the

21  following brands: Bosch Premium Cabin Filters, Bosch Particulate Filters, Bosch Activated

22  Charcoal Filters, Bosch Fuel Filters, and Bosch FILTECH Oil Filters.

23      19.    Mann + Hummel U.S.A., Inc. ("Mann + Hummel") is the United States

24  subsidiary of The Mann + Hummel Group, a German business entity. Mann + Hummel's

25  business headquarters in the United States is located at 6400 S. Sprinkle Road, Portage,

26  Michigan 49002-9706. During the Class Period, Mann + Hummel directly and through its

27  wholly-owned and controlled subsidiaries manufactured, marketed, sold and/or distributed

28  Filters to customers throughout the United States under the MANN-FILTER brand.

1    20.    Defendant ArvinMeritor, Inc. ("ArvinMeritor") is an Indiana corporation with its

2    principal place of business located at 2135 West Maple Road, Troy, Michigan 48084. Prior to

3    April 2006, ArvinMeritor owned defendant Purolator. During the Class Period, ArvinMeritor

4    through its wholly-owned and controlled subsidiary manufactured, marketed, sold and/or

5    distributed Filters to customers throughout the United States.

6    21.    Defendant Wix Filtration Corp., LLC ("Wix") is a limited liability company

7    headquartered in Gastonia, North Carolina, with a business address located at 1 Wix Way,

8    Gastonia, North Carolina 28054. During the Class Period, Wix directly and through its wholly-

9    owned and controlled subsidiaries manufactured, marketed, sold and/or distributed Filters to

10    customers throughout the United States under the Wix® Filter brand.

11    22.    Defendant Affinia Group, Inc. is a Delaware corporation headquartered in Ann

12    Arbor, Michigan, with a business address at 1101 Technology Drive, Ann Arbor, Michigan

13    48108. Defendant Wix is a wholly-owned subsidiary of Affinia Group, Inc. During the Class

14    Period, Affinia Group, Inc. directly and through its wholly-owned and controlled subsidiaries

15    manufactured, marketed, sold and/or distributed Filters to customers throughout the United

16    States.

17    23.    Defendant Cummins, Inc. ("Cummins") is an Indiana corporation, headquartered

18    in Columbus, Indiana, with a business address at 500 Jackson Street, Box 3005, Columbus,

19    Indiana 47202. During the Class Period, Cummins directly and through its wholly-owned and

20    controlled subsidiaries manufactured, marketed, sold and/or distributed Filters to customers

21    throughout the United States.

22    24.    Defendant Cummins Filtration, Inc. ("Cummins Filtration") is a wholly-owned

23    subsidiary of defendant Cummins, Inc., with its principal place of business located at Stoughton,

24    Wisconsin. During the Class Period, Cummins directly and through its wholly-owned and

25    controlled subsidiaries manufactured, marketed, sold and/or distributed Filters to customers

26    throughout the United States under the following brands: OptiAir™, Magnum RS™, Direct

27    Flow™, Fleetguard's FS1000™, Fuel Pro® filter, Diesel Pro® filter, Industrial Pro™ filter,

28    Duramax™ and Venturi™ Combo System.

1    25.    Defendant The Donaldson Company ("Donaldson") is a Delaware corporation

2    with its principal place of business located at 1400 West 94th Street, Minneapolis, Minnesota

3    55431. During the Class Period, Wix directly and through its wholly-owned and controlled

4    subsidiaries manufactured, marketed, sold and/or distributed Filters to customers throughout the

5    United States under the Donaldson brand.

6    26.    Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation with its principal

7    place of business located at 440 E. Hwy. 30, Kearney, Nebraska 68848-6010. During the Class

8    Period, Baldwin directly and through its wholly-owned and controlled subsidiaries

9    manufactured, marketed, sold and/or distributed Filters to customers throughout the United

10   States under the Baldwin brand.

11   27.    Defendant Hastings Premium Filters ("Hastings") is a corporation headquartered

12   in Kearney, Nebraska, with a business address at 4400 E. Hwy. 30, Kearney, Nebraska 68848-

13   6010. During the Class Period, Hastings directly and through its wholly-owned and controlled

14   subsidiaries manufactured, marketed, sold and/or distributed Filters to customers throughout the

15   United States.

16   28.    Defendant Clarcor, Inc. ("Clarcor") is a Delaware corporation headquartered in

17   Franklin, Tennessee, with a business address located at 840 Crescent Centre Drive, Suite 600,

18   Franklin, Tennessee 37067. Defendants Baldwin and Hastings are wholly-owned subsidiaries of

19   Clarcor. During the Class Period, Clarcor directly and through its wholly-owned and controlled

20   subsidiaries manufactured, marketed, sold and/or distributed Filters to customers throughout the

21   United States.

22   ## DEFENDANTS AND CO-CONSPIRATORS

23   29.    The true names and capacities of defendants DOES 1-20 are presently unknown

24   to Plaintiff. Each of such fictitiously named defendants have participated as co-conspirators with

25   Defendants and have performed acts and made statements in furtherance of the conspiracy

26   and/or in furtherance of the anticompetitive, unfair or deceptive conduct. When and if Plaintiff

27   learns the identity of such persons, Plaintiff will amend this Complaint to show such defendant's

28   true name and capacity.

30. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

31. Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for Filters made by its parent company.

## INTERSTATE TRADE AND COMMERCE

32. Throughout the Class Period, there was a continuous and uninterrupted flow of Filter sales in interstate and international commerce throughout the United States.

33. Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to Filter purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States Filters market.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons and or entities residing in the United States who or which indirectly purchased Filters manufactured and/or distributed by one or more of the Defendants in the United States for their own use and not for resale, at any time during the period from January 1, 1999 through the present. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

1     35.    Plaintiff also brings this action on its own behalf and as a class action pursuant to

2 Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and/or respective

3 state statute(s), on behalf of all members of the following classes: Arizona, Arkansas, California,

4 District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan,

5 Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North

6 Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and

7 Wisconsin.

8     36.    This action has been brought and may properly be maintained as a class action

9 pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

10     a.    The Class is ascertainable and there is a well-defined community of

11 interest among members of the Class;

12     b.    Based upon the nature of trade and commerce involved and the number of

13 indirect purchasers of Filters, Plaintiff believes that the number of Class members is very large,

14 and therefore joinder of all Class members is not practicable;

15     c.    Plaintiff's claims are typical of the claims of the members of the Class

16 because Plaintiff indirectly purchased Filters manufactured by Defendants or their co-

17 conspirators, and therefore Plaintiff's claims arise from the same common course of conduct

18 giving rise to the claims of the members of the Class and the relief sought is common to the

19 Class;

20     d.    The following common questions of law or fact, among others, exist as to

21 the members of the Class:

22     i.    Whether Defendants formed and operated a combination or

23 conspiracy to fix, raise, maintain, or stabilize the prices of Filters;

24     ii.    Whether the combination or conspiracy caused prices of Filters to

25 be higher than they would have been in the absence of Defendants' conduct;

26     iii.    The operative time period of Defendants' combination or

27 conspiracy;

28

iv.    Whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

v.    The appropriate measure of the amount of damages suffered by the Class;

vi.    Whether Defendants' conduct violates Section 1 of the Sherman Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

vii.    Whether Defendants' conduct violates the Indirect Purchaser States' antitrust laws as alleged in the Second Claim for Relief;

viii.    Whether Defendants' conduct violates the unfair competition and consumer protection laws of the Consumer Protection States as alleged in the Third Claim for Relief; and

ix.    The appropriate nature of class-wide equitable relief.

e.    These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages;

f.    After determination of the predominant common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.    Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent it and the Class;

h.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures it would not be feasible for Class members to

1    redress the wrongs done to them. Even if the Class members could afford individual litigation,

2    the court system could not. Further, individual litigation presents the potential for inconsistent or

3    contradictory judgments and would greatly magnify the delay and expense to all parties and the

4    court system. Therefore, the class action device presents far fewer case management difficulties

5    and will provide the benefits of unitary adjudication, economy of scale and comprehensive

6    supervision in a single court;

7            i.      Defendants have acted, and/or refused to act, on grounds generally

8    applicable to the Class, thereby making appropriate final injunctive relief with respect to the

9    Class as a whole; and

10           j.      In the absence of a class action, Defendants would be unjustly enriched

11   because they would be able to retain the benefits and fruits of its wrongful conduct.

12                          **THE AUTOMOTIVE FILTERS MARKET**

13   37.     Filters are typically detachable units that require regular service or replacement.

14   They are essentially fungible products.

15   38.     Oil filters are part of a vehicle's lubrication system and help to protect the engine

16   from premature wear. Each moving part in the engine and the cylinder walls requires clean oil

17   for proper lubrication and lasting life. The oil filter cleans the oil as it passes through the filter

18   element or filtering media. This prevents abrasive contaminants in the engine lubrication system

19   from damaging engine parts.

20   39.     Fuel filters protect fuel system components in a vehicle from contaminants in the

21   fuel. All of the fuel that enters the engine must first pass through the fuel filter. Fuel filters are

22   vital for long and trouble-free fuel system and engine life.

23   40.     Engine air filters remove soot, carbon, abrasives and other contaminants from the

24   air before the air mixes with fuel in a vehicle's engine induction system. The engine air filter

25   prevents microscopic dust particles from entering the engine, which can damage cylinder walls,

26   pistons and piston rings.

27   41.     Cabin air filters capture airborne contaminants such as soot, dirt, pollen, and

28   other pollutants, that enter a vehicle cabin through its heating, air conditioning and defrosting

1   (HVAC) system. Cabin air filters also prevent leaves, dirt, bugs and other debris from entering

2   the HVAC system and negatively impacting the operating of the heater, air conditioner and

3   defroster.

4        42.    Coolant filters are used on most types of diesel engines in vehicles. These filters

5   help to maintain proper engine heat transfer by filtering solid contaminants from the coolant and

6   by minimizing corrosion and deposits in the cooling system.

7        43.    Transmission filters protect vehicle transmissions against contaminants in the

8   transmission fluid system. Proper filtration helps improve transmission life by minimizing wear

9   and preventing sticking and scoring of sensitive shift control valves. In the event of a part

10  failure, the filter also guards against secondary damage to other parts and thus helps minimize

11  repair costs.

12       44.    Hydraulic filters are used for a variety of applications for heavy truck, off-

13  highway, agricultural and construction vehicles and equipment, which depend on hydraulic

14  fluids to power many of their critical functions.

15       45.    Filter manufacturers, such as Defendants, sell Filters to both vehicle

16  manufacturers for use in new automotives, as well as to "aftermarket" sellers for professional or

17  self-installation. Defendants are the primary manufacturers of aftermarket (or "replacement")

18  Filters in the United States and the allegations herein involve the Filters aftermarket. Annual

19  Filters sales in the United States are approximately $3-5 billion.

20       46.    Defendant Honeywell estimated in 2007 that there were 217 million cars on the

21  road in the United States in that year. Most car manufacturers recommend that the car owner

22  replace the oil filter at every oil change. NAPA recommends that a car owner replace the air

23  filter once a year, or every 15,000 miles. Thus, for most cars on the road today, the owners

24  replace their vehicles oil filter at least every year and air filters approximately every year.

25  **STRUCTURAL CHARACTERISTICS OF THE AUTOMOTIVE FILTERS MARKET**

26       47.    The structural characteristics of the Filters market are conducive to the type of

27  collusive activity alleged in this Complaint.

28

1    48.    Filters are commodity-like products. One Defendant's Filter for a particular
2    application is substitutable for another's. Defendants sell and Plaintiff (and Class members)
3    purchases Filters primarily on the basis of price. According to an industry report, direct
4    purchasers surveyed for the report considered price to be the most important factor in their
5    purchase of Filters.

6    49.    Filters are considered inter-changeable, undifferentiated products. All Filters
7    must undergo Society of Automotive Engineers (SAE) testing to ensure they meet vehicle
8    manufacturers' specifications. An industry report notes that vehicle manufacturers have done a
9    better job utilizing a small number of oil filters to cover all of their engine applications. Thus,
10   there are fewer part numbers in the aftermarket filter line than other aftermarket automotive
11   products.

12   50.    It is easier to form and sustain a cartel when the product in question is
13   commodity-like because it is easier to agree on prices to charge and to monitor those prices once
14   an agreement is formed.

15   51.    There is a high degree of market concentration in the Filters market. This
16   facilitates the operation of a cartel because it makes it easier to coordinate behavior among
17   possible co-conspirators and makes it more difficult for customers to avoid the effects of
18   collusive behavior. Defendants control 90% of the sales in the market for aftermarket
19   automotive Filters.

20   52.    There are significant barriers to entry into the market for Filters. These barriers to
21   entry arise primarily from the need for significant start-up capital expenditures, initial product
22   depth within a product line, distribution infrastructure and long-standing customer relationships.
23   The presence of significant barriers to entry makes new entry by others difficult and helps
24   facilitate the operation of a cartel.

25   53.    There is significant evidence that demand for Filters is inelastic, or in other
26   words, does not change in the face of price changes. Because vehicle manufacturers either
27   require or strongly encourage filter changes at specific intervals, Class Members do not decrease

28

**13**
**CLASS ACTION COMPLAINT**

1  their use of Filters when prices increase. Filters are a small part of the cost of owning and
2  maintaining an automobile.

3      54.    There are no reasonable substitutes for Filters. Vehicle owners have little choice
4  but to have the  filters in their vehicle replaced because they tend to wear out over time and are
5  necessary for the operation of their vehicles.

6  **DEFENDANTS' COLLUSIVE ACTIVITIES**

7      55.    Plaintiff is informed and believes, and thereon alleges, that Defendants and their
8  co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which
9  has been to raise the prices at which they sold Filters to artificially inflated levels from at least
10  January 1, 1999 through the present.

11      56.    At least as early as 1999, Defendants and their co-conspirators had numerous
12  confidential discussions with each other and exchanged extensive communications regarding
13  pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix,
14  raise, maintain or stabilize prices, rig bids, and allocate customers for Filters in the United
15  States.

16      57.    As just one example, on June 28, 1999, a Purolator senior executive faxed a letter
17  to his counterpart at Honeywell which announced a 6 percent price increase on all Purolator-
18  branded Filters scheduled to become effective on August 15, 1999. Purolator did not notify its
19  customers of the increased prices until more than two weeks later, on July 14, 1999.

20      58.    Defendants also had face-to-face meetings regarding their respective companies'
21  contemplated price increases. One or more of these meetings took place in May 1999 at the
22  Heritage Show in Nashville, Tennessee, a regular meeting of members of the Filters industry. At
23  this and other meetings, Defendants agreed to raise Filter prices, which they subsequently did.

24      59.    At a meeting of Champion sales representatives in February 2004, Champion's
25  President informed his sales team of Champion's proposed price increase and instructed them to
26  make sure Champion's competitors followed suit in terms of timing and amount pursuant to
27  their continuing agreement. Champion sales representatives followed the directive and met with
28  other Defendants' sales representatives to further the conspiracy.

1    60.    In an internal company e-mail from 2004, under the subject line "Price Increase,"

2    Champion confirmed that the other Defendants were "on board" with the amount of a

3    coordinated price increase.

4    61.    Defendants engaged in continuous and ongoing face-to-face meetings to further

5    their anticompetitive activities. Many of these meetings occurred at the annual Filter Council

6    meeting held in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to

7    further the anticompetitive purposes of Defendants' unlawful conspiracy.

8    62.    Pursuant to their unlawful agreement, Defendants each instituted similar price

9    increases for Filters during the Class Period, including in 1999, early 2004, and late 2004/early

10    2005. These price increases were approximately 4-6% each.

11    63.    Defendants' conduct during the Class Period in collusively fixing, increasing,

12    maintaining or stabilizing prices, rigging bids, and allocating customers was for the sole purpose

13    of foreclosing price competition in order to maintain artificially high prices for their Filters.

14    64.    By coordinating their pricing activities and allocating customers, Defendants

15    removed from Plaintiff the ability to constrain Defendants' pricing by moving (or threatening to

16    move) their Filter business from one Defendant to another in response to price increases.

17    65.    By engaging in collusive conduct in the market for Filters, Defendants were able

18    to manipulate and artificially fix, raise, maintain or stabilize the prices for the Filters that they

19    manufactured and sold in the United States.

20    66.    During the Class Period, Plaintiff and the class members indirectly purchased

21    Filters manufactured by the Defendants or their co-conspirators.

22    67.    Plaintiff and the class members paid more for their indirect Filters purchases than

23    they would have paid had Defendants not fixed Filters prices and cooperated in other aspects of

24    the Filters market.

25    68.    As a direct and proximate result of Defendants' conspiracy, Plaintiff and the class

26    members have been injured and financially damaged in their respective businesses and property

27    in presently undetermined amounts.

28    //

# VIOLATIONS ALLEGED

## First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

69.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

70.     Beginning at a time unknown to Plaintiff, but at least as early as January 1, 1999, through at the present, the exact dates being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

71.     In particular, Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of Filters sold in the United States.

72.     Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market prices of Filters as herein alleged.

73.     The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of Filters they sold in the United States and elsewhere.

74.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

      a.      Participated in meetings and conversations to discuss the prices of Filters;

      b.      Agreed to manipulate prices and supply of Filters in a manner that deprived purchasers of Filters of free and open competition;

      c.      Issued price announcements and price quotations in accordance with the agreements reached;

      d.      Agreed to and did rig bids in the market for Filters;

1     e.  Agreed to and did allocate customers in the market for Filters; and

2     f.  Sold Filters to customers in the United States at non-competitive prices.

3   75.  The combination and conspiracy alleged herein has had the following effects,

4 among others:

5     a.  Price competition in the sale of Filters has been restrained, suppressed

6       and/or eliminated in the United States;

7     b.  Prices for Filters sold by Defendants and their co-conspirators have been

8       fixed, raised, maintained and stabilized at artificially high, non-

9       competitive levels throughout the United States; and

10     c.  Those who purchased Filters directly or indirectly from Defendants have

11       been deprived the benefits of free and open competition.

12   76.  As a direct result of the unlawful conduct of Defendants and their co-conspirators

13 in furtherance of their continuing contract, combination or conspiracy, Plaintiff and the members

14 of the class have been injured and will continue to be injured in their business and property by

15 paying more for Filters purchased indirectly from the Defendants and their co-conspirators than

16 they would have paid and will pay in the absence of the combination and conspiracy.

17   77.  These violations are continuing and will continue unless enjoined by this Court.

18   78.  Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Class

19 seek the issuance of an injunction against Defendants, preventing and restraining the violations

20 alleged herein.

21          **Second Claim For Relief**

22        **(Violation of State Antitrust Statutes)**

23   79.  Plaintiff incorporates and realleges, as though fully set forth herein, each and

24 every allegation set forth in the preceding paragraphs of this Complaint.

25   80.  Defendants' intentional and purposeful anticompetitive acts that are described

26 above, including but not limited to acts of collusion to set prices, rig bids and allocate customers,

27 and the actual act of price fixing itself, were intended to and did in fact cause Plaintiff and the

28

1   members of the Class to pay supracompetitive prices for Filters purchased in the Indirect
2   Purchaser States.

3       81.    Defendants' contract, combination and conspiracy as described above is in
4   violation of the following state antitrust statutes:

5       82.    By reason of the foregoing, Defendants have entered into agreements in restraint
6   of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

7       83.    By reason of the foregoing, Defendants have entered into agreements in restraint
8   of trade in violation of California Business & Professions Code §16720 et seq.

9       84.    By reason of the foregoing, Defendants have entered into agreements in restraint
10  of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

11      85.    By reason of the foregoing, Defendants have entered into agreements in restraint
12  of trade in violation of Iowa Code §§553.1 et seq.

13      86.    By reason of the foregoing, Defendants have entered into agreements in restraint
14  of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

15      87.    By reason of the foregoing, Defendants have entered into agreements in restraint
16  of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

17      88.    By reason of the foregoing, Defendants have entered into agreements in restraint
18  of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

19      89.    By reason of the foregoing, Defendants have entered into agreements in restraint
20  of trade in violation of Minnesota Stat. §§325D.52 et seq.

21      90.    By reason of the foregoing, Defendants have entered into agreements in restraint
22  of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

23      91.    By reason of the foregoing, Defendants have entered into agreements in restraint
24  of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

25      92.    By reason of the foregoing, Defendants have entered into agreements in restraint
26  of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

27      93.    By reason of the foregoing, Defendants have entered into agreements in restraint
28  of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

1     94.    By reason of the foregoing, Defendants have entered into agreements in restraint

2  of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

3     95.    By reason of the foregoing, Defendants have entered into agreements in restraint

4  of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

5     96.    By reason of the foregoing, Defendants have entered into agreements in restraint

6  of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

7     97.    By reason of the foregoing, Defendants have entered into agreements in restraint

8  of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

9     98.    By reason of the foregoing, Defendants have entered into agreements in restraint

10  of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

11     99.    By reason of the foregoing, Defendants have entered into agreements in restraint

12  of trade in violation of West Virginia Code §§47-18-1 et seq.

13     100.    By reason of the foregoing, Defendants have entered into agreements in restraint

14  of trade in violation of Wisconsin Stat. §§133.01 et seq.

15     101.    Class members in each of the states listed above paid supracompetitive,

16  artificially inflated prices for Filters. As a direct and proximate result of Defendants' unlawful

17  conduct, Plaintiff and members of the Class have been injured in their business and property in

18  that they paid more for Filters than they otherwise would have paid in the absence of

19  Defendants' unlawful conduct.

20     102.    As a result of Defendants' and their co-conspirators' violation of the above

21  Indirect Purchaser States' antitrust laws, Plaintiff seeks damages, to be trebled where permitted

22  by a particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the

23  extent permitted by the above Indirect Purchaser States' antitrust laws.

24                     **Third Claim for Relief**

25    **(Violation of State Consumer Protection and Unfair Competition Statutes)**

26     103.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

27  every allegation set forth in the preceding paragraphs of this Complaint.

28

1      104.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

2   fraudulent acts or practices in violation of the state consumer protection and unfair competition

3   statutes listed below.

4      105.    Defendants have engaged in unfair competition or unfair or deceptive acts or

5   practices in violation of Arkansas Code §4-88-101 et seq.

6      106.    Defendants have engaged in unfair competition or unfair or deceptive acts or

7   practices in violation of California Business & Professions Code §17200 et seq.

8      107.    Defendants have engaged in unfair competition or unfair or deceptive acts or

9   practices in violation of District of Columbia Code §28-3901 et seq.

10      108.    Defendants have engaged in unfair competition or unfair or deceptive acts or

11   practices in violation of Florida Stat. §501.201 et seq.

12      109.    Defendants have engaged in unfair competition or unfair or deceptive acts or

13   practices in violation of Hawaii Rev. Stat. §480 et seq.

14      110.    Defendants have engaged in unfair competition or unfair or deceptive acts or

15   practices in violation of Kansas Stat. §50-623 et seq.

16      111.    Defendants have engaged in unfair competition or unfair or deceptive acts or

17   practices in violation of 5 Maine Rev. Stat. §207 et seq.

18      112.    Defendants have engaged in unfair competition or unfair or deceptive acts or

19   practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

20      113.    Defendants have engaged in unfair competition or unfair or deceptive acts or

21   practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

22      114.    Defendants have engaged in unfair competition or unfair or deceptive acts or

23   practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

24      115.    Defendants have engaged in unfair competition or unfair or deceptive acts or

25   practices in violation of New Mexico Stat. §57-12-1 et seq.

26      116.    Defendants have engaged in unfair competition or unfair or deceptive acts or

27   practices in violation of New York Gen Bus. Law §349 et seq. Specifically:

28              a.      Defendants engaged in commerce in New York;

1             b.      Defendants and their co-conspirators secretly agreed to raise prices by

2 direct agreement on bids to customers located in New York and through artificial restraints on

3 the entire Filters market;

4             c.      New York consumers were targets of the conspiracy;

5             d.      The secret agreements were not known to New York consumers;

6             e.      Defendants made public statements about the price of Filters that

7 Defendants knew would be seen by New York consumers; such statements either omitted

8 material information that rendered these statements that they made materially misleading or

9 affirmatively misrepresented the real cause of price increases for Filters; and, Defendants alone

10 possessed material information that was relevant to consumers, but failed to provide the

11 information;

12             f.      Because of Defendants' unlawful trade practices in the State of New

13 York, there was a broad impact on New York consumer class members who indirectly

14 purchased Filters; and consumer class members have been injured because they have paid more

15 for Filters than they would have paid in the absence of Defendants' unlawful trade acts and

16 practices;

17             g.      Because of Defendants' unlawful trade practices in the State of New

18 York, New York consumer class members who indirectly purchased Filters were misled to

19 believe that they were paying a fair price for Filters or the price increases for Filters were for

20 valid business reasons; and similarly situated consumers were potentially affected by

21 Defendants' conduct;

22             h.      Defendants knew that their unlawful trade practices with respect to

23 pricing of Filters would have an impact on New York consumers and not just Defendants' direct

24 customers;

25             i.      Defendants knew that their unlawful trade practices with respect to

26 pricing of Filters would have a broad impact, causing consumer class members who indirectly

27 purchased Filters to be injured by paying more for Filters than they would have paid in the

28 absence of Defendants' unlawful trade acts and practices;

1             j.      Defendants' consumer-oriented violations adversely affected the public

2  interest in the State of New York.

3        117.    Defendants have engaged in unfair competition or unfair or deceptive acts or

4  practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

5        118.    Defendants have engaged in unfair competition or unfair or deceptive acts or

6  practices in the sale of Filters that were indirectly purchased primarily for personal, family, or

7  household purposes in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

8             a.      Defendants engaged in commerce in Rhode Island;

9             b.      Defendants and their co-conspirators unscrupulously and secretly agreed

10  to raise Filters prices by direct agreement on prices which Defendants charged their customers

11  located in Rhode Island and through artificial restraints on the entire Filters market;

12             c.      The secret agreements were not known to Rhode Island natural persons

13  who indirectly purchased Filters primarily for personal, family or household purposes;

14             d.      Defendants made public statements that Defendants knew would be seen

15  by Rhode Island natural persons who indirectly purchased Filters primarily for personal, family

16  or household purposes; such statements created a likelihood of confusion or misunderstanding

17  with respect to the real reasons that the prices of Filters were rising; and, such statements either

18  omitted material information that rendered the statements materially misleading  and confusing,

19  or affirmatively deceived such consumers about the real cause of price increases for Filters;

20             e.      Because of Defendants' unlawful and unscrupulous trade practices in

21  Rhode Island, natural persons in Rhode Island who indirectly purchased Filters primarily for

22  personal, family or household purposes were misled or deceived to believe that they were paying

23  a fair price for Filters or the price increases for Filters were for valid business reasons;

24             f.      Natural persons who indirectly purchased Filters primarily for personal,

25  family or household purposes have been injured because they have paid more for Filters than

26  they would have in the absence of Defendants' unlawful and unscrupulous trade acts and

27  practices;

28

1         g.      Defendants knew that their unscrupulous and unlawful trade practices

2 with respect to pricing of Filters would have an impact on Rhode Island natural persons who

3 indirectly purchased Filters primarily for personal, family or household purposes and not just

4 Defendants' direct customers;

5         h.      Defendants knew that their violations with respect to pricing of Filters

6 would have a broad impact, causing natural persons who indirectly purchased Filters primarily

7 for personal, family or household purposes to be injured by paying more for Filters than they

8 would have paid in the absence of Defendants' unlawful trade acts and practices;

9         i.      Defendants' violations adversely affected public policy in Rhode Island.

10     119.    Defendants have engaged in unfair competition or unfair or deceptive acts or

11 practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

12     120.    Class members in each of the Consumer Fraud States listed above paid

13 supracompetitive, artificially inflated prices for Filters. As a direct and proximate result of

14 Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their

15 business and property in that they paid more for Filters than they otherwise would have paid in

16 the absence of Defendants' unlawful conduct.

17     121.    Plaintiff and the Class are therefore entitled to all appropriate relief as provided

18 for by the above Consumer Fraud States' laws, including but not limited to, actual damages,

19 injunctive relief, attorneys' fees, and equitable relief such as restitution and/or disgorgement of

20 all revenues, earnings, profits, compensation and benefits which may have been obtained by

21 Defendants as a result of their unlawful conduct.

22 **Fourth Claim for Relief**

23 **(Unjust Enrichment and Disgorgement of Profits)**

24     122.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

25 every allegation set forth in the preceding paragraphs of this Complaint.

26     123.    Defendants have been unjustly enriched through overpayments by Plaintiff and

27 the Class members and the resulting profits.

28

**23**
**CLASS ACTION COMPLAINT**

1    124.    Under common law principles of unjust enrichment, Defendants should not be

2    permitted to retain the benefits conferred via overpayments by Plaintiff and the members of the

3    Class.

4    125.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and

5    establishment of a constructive trust from which Plaintiff and the Class members may seek

6    restitution.

7    **FRAUDULENT CONCEALMENT**

8    126.    Throughout the relevant period, Defendants affirmatively and fraudulently

9    concealed their unlawful conduct against Plaintiff and the Class.

10    127.    Plaintiff and the members of the Class did not discover, and could not discover

11    through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as

12    alleged herein until shortly before this litigation was commenced. Nor could Plaintiff and the

13    members of the Class have discovered the violations earlier than that time because Defendants

14    conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

15    furtherance thereof, and fraudulently concealed their activities through various other means and

16    methods designed to avoid detection. The conspiracy was by its nature self-concealing.

17    128.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect

18    to Filters, which they affirmatively concealed, in at least the following respects:

19    a.    By agreeing among themselves not to discuss publicly, or otherwise

20    reveal, the nature and substance of the acts and communications in furtherance of their illegal

21    scheme; and

22    b.    By giving false and pretextual reasons for the price increases for Filters

23    during the relevant period and by describing such pricing falsely as being the result of external

24    costs rather than collusion.

25    129.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

26    and the Class assert the tolling of any applicable statute of limitations affecting the rights of

27    action of Plaintiff and the members of the Class.

28    //

**24**
**CLASS ACTION COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes:

      a.    A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim for Relief;

      b.    A violation of the Indirect Purchaser States' antitrust laws as alleged in the Second Claim for Relief;

      c.    A violation of the Consumer Fraud States' consumer protection and unfair competition laws as alleged in the Third Claim for Relief; and

      d.    Acts of unjust enrichment as set forth in the Fourth Claim for Relief herein.

C.    That Plaintiff and the Class recover damages, as provided by the Indirect Purchaser States' antitrust laws and the Consumer Fraud States' consumer protection and unfair competition laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.    That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

E.    That Plaintiff and the Class it represents be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

1     F.     That the Court award Plaintiff and the class it represents pre-judgment and post-

2  judgment interest as permitted by law;

3     G.     That Plaintiff and the members of the Class recover their costs of suit, including

4  reasonable attorneys' fees as provided by law; and

5     H.     That the Court award Plaintiff and the Class it represents such other and further

6  relief as may be necessary and appropriate.

7

## JURY DEMAND

8     Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

9

10  Dated: June 19, 2008       By:

11                          Joseph M. Patane, Esq. (72202)
LAW OFFICE OF JOSEPH M. PATANE

12                          2280 Union Street
San Francisco, CA 94123

13                          Telephone: (415) 563-7200
Facsimile: (415) 346-0679

14                          E-mail: jpatane@tatp.com

15                          Kenneth L. Valinoti, Esq. (118442)

16                          **VALINOTI & DITO LLP**
180 Montgomery Street, Suite 940

17                          San Francisco, CA 94104
Telephone: (415) 986-1338

18                          Facsimile: (415) 986-1231
E-mail: kvalinoti@valinoti-dito.com

19

20                          *Attorneys for Plaintiff G.S.G. Excavating*

21

22

23

24

25

26

27

28